OPINION OF THE COURT
Seymour Lakritz, J.
The court on its own motion withdraws its decision dated December 6, 1978, and substitutes the following decision in its place:
This appears to be a case of first impression.
This is an action by plaintiff to recover a sum of money pursuant to the terms of a policy of automobile insurance. The policy written by the defendant, among other items, insured the plaintiff against the theft of a 1970 Lincoln automobile and was written with a deductible feature of $200 in the event of any such theft.
Plaintiff testified that he had purchased the car in question from his uncle, in cash, in November of 1977, and had paid $1,700 therefor; that the car remained in the plaintiff’s yard *474 until April, 1978, when he registered the vehicle and obtained the insurance. The insurance was obtained by telephoning an insurance broker who then placed the insurance including the liability portions of the policy through the assigned risk. The policy became effective April 20, 1978, and was to terminate April 20, 1979, and was physically issued on June 12, 1978. The plaintiff produced a vehicle registration which was date June 27, 1978. The car was stolen on July 12, 1978.
By notice dated August 8, 1978, the defendant suspended the insurance on the subject automobile effective April 24, 1978 at 12:01 a.m. The reason therefor being "because of failure to comply with New York inspection requirements of vehicle damage, insurance with respect to the automobile described in this endorsement is suspended as of the effective date of this endorsement.”
The plaintiff had paid, and the defendant acknowledged receiving insurance premiums of $180 as a deposit and $79.90 as a further payment towards the total premuim, no part of which had been offered to be returned to the plaintiff.
It is conceded by both sides that the automobile in question was never inspected for the purpose of coverage of the physical damage thereon.
Because of the serious nature of insurance losses to the companies doing business in this State caused as a result of physical damage claims, the Legislature of this State in its wisdom amended the Insurance Law. Section 167-d of the Insurance Law became effective August 11, 1977, pursuant to which a requirement was added making it mandatory for insurance carriers to inspect automobiles in order to provide physical damage insurance to the policyholder. Subdivision 4 of that section reads as follows: "A newly issued policy shall not provide coverage for automobile physical damage perils prior to an inspection of the automobile by the insurer.”
The Superintendant of Insurance was given authority to issue regulations to implement the law. Paragraph (a) of subdivision 14 of that section of the law requires "that insurers take appropriate action to ensure that there is wide public dissemination of the provisions of this section relating to the rights and obligations of insureds and insurers.”
Paragraph (b) of subdivision 14 permits dispensation with or deferral of these inspections under circumstances specified in regulations promulgated by the superintendant.
*475 Pursuant to the mandate of the Legislature, the Superintendent of Insurance did promulgate rules concerning such inspections and they are contained in Part 67 of title 11 of the Official Compilation of Codes, Rules and Regulations of the State of New York.
Under subdivision (a) of section 67.2 the rule sets forth the following: "No new policy or endorsement insuring a private passenger automobile shall be issued in this State to provide coverage for automobile physical damage, effective on and after December 1, 1977, unless the insurer has inspected the automobile.”
Section 67.4 of title 11 of the Official Compilation of Codes, Rules and Regulations of the State of New York is entitled "Deferral of inspection.” Subdivision (c) thereof reads as follows: "Notwithstanding subdivision (a) of section 67.2 [new business] of this Part, an insurer may defer the mandatory inspection for two business days following the effective date of coverage. The insurer shall, at the time coverage is effected, furnish the insured with an inspection site where the inspection can be conducted during the two-day period. * * * If the inspection is not conducted by the end of the second business day, automobile physical damage coverage on the automobile shall be suspended at 12:01 a.m. of the day following the second business day, and such suspension shall continue until the inspection is effected.” (Emphasis supplied.)
Section 67.5 is entitled "Standards for inspections.” Subdivision (f) reads as follows: "When an insurer accepts a new risk for which automobile physical damage coverage is requested, and for which an inspection is required before such coverage may take effect, the insurer shall arrange for the inspection [emphasis supplied] to take place at the selected inspection site during the next two days and such site will be open for business unless the insured requests a later date.”
Subdivision (k) of the same section reads as follows: "If the automobile is not inspected pursuant to this Part due to the fault of the insurer, automobile physical damage coverage on the automobile shall not lapse. [Emphasis supplied.] The failure of the insurer to act promptly does not relieve it of its obligation to inspect.”
The court finds that the defendant wrote the insurance and never provided the plaintiff herein with a list of inspection sites. It is quite apparent that it also never advised the plaintiff that an inspection was required in order to maintain *476 the physical damage portion of the policy. It is not the duty of the proposed insured, as set forth in the regulations, to inquire about inspection or to do anything about inspection until and unless the insurer makes him aware thereof and furnishes a list of inspection sites.
The court finds further that the notice of suspension dated August 8, 1978 and made retroactive to the effective date of April 24, 1978 is of no force and effect and cannot result in the cancellation of the physical damage insurance purchased by the plaintiff herein. The court therefore finds in favor of the plaintiff on the issue of liability.
The next question which has been raised is the amount of the loss. Plaintiff testified that he purchased his vehicle for $1,700. Plaintiff further testified that when he filed his proof of loss with the insurance carrier, his claim was for $1,300. Plaintiff produced as a witness a person who said that he was a diesel mechanic, and he testified that in his opinion the equipment that he saw on the vehicle gave it a value of $2,500 to $3,000. The court does not consider that this witness had sufficient expertise to testify as to the value of the vehicle. However, this witness was cross-examined by the defendant and was furnished a "red book”, which is commonly used in the trade to fix values of various makes and kinds of vehicles, and under cross-examination this witness stated, that in the "red book” the value of the kind of vehicle which is the subject of this lawsuit was $1,300 at the time of loss.
The court chooses to, and does, accept this figure as the fair and reasonable value of the automobile in question at or about the time of its theft. Since there is a $200 deductible which attaches to this loss, the court awards in favor of the plaintiff the sum of $1,100 with interest from July 12, 1978.